[No. 2247–3.   Division Three.   May 31, 1978.]

Unigard Mutual Insurance Co., *Respondent,* v. Spokane
School District No. 81, *Appellant,* Charles
Hensley, et al, *Respondents.*

*James S. Craven* and *Winston & Cashatt,* for appellant.

*Randall L. Stamper, MacGillivray, Jones, Clarke, Schiffner & Johnson, Lawrence Cary Smith,* and *Smith & Donohue,* for respondents.

McInturff, J.—The insurers of School District No. 81 appeal from a declaratory judgment that Unigard Mutual

Insurance Co. (Unigard) is not obligated to defend or indemnify its insureds, William Winkler and Mr. and Mrs. Charles Hensley, in an action by the school district against them for $250,000 in fire damage to Wilson Elementary School in Spokane.

This action arises from a suit brought by the school district in August 1974 alleging that William Winkler carelessly and negligently caused the fire and that his parents, the Hensleys, having knowledge of his propensities, negligently failed to supervise and control him. Unigard filed this action for declaratory judgment in November 1974 seeking to avoid any liability to any of the parties covered by its policy.

The policy in question was issued by Unigard to Ruth Winkler Hensley as the named insured in December 1972. It establishes the duty to defend and indemnify in the following manner:

> This Company agrees to pay on behalf of *the Insured* all sums which *the Insured* shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applies, caused by an occurrence. This Company shall have the right and duty, at its own expense, to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, but may make such investigation and settlement of any claim or suit as it deems expedient.

(Italics ours.)

The policy defined "occurrence" as "an accident, including injurious exposure to conditions, which results, during the endorsement term, in bodily injury or property damage." And, the following exclusionary provision was included, "This policy does not apply . . . to bodily injury or property damage which is either expected or intended from the standpoint of *the insured*." (Italics ours.) There is no dispute that both William Winkler and the parents are

"insureds" within the meaning of the policy.[1]

The record reveals the following facts. On July 8, 1973, William Winkler, who was then 11 years old, broke into the school building and set fire to the contents of a trash can. He watched the fire burn for a short while, then ran to a nearby drinking fountain for water with which to douse the blaze. It was not working though, so he returned to the fire, became frightened and ran out of the building. He did not notify anyone of the blaze. The fire spread, causing extensive damage to the building and its contents.

He testified he did not intend or expect to cause damage to the school building but that he did intend to light the fire. At the time of the blaze he knew that fire could spread, and he had previously been involved in a fire-starting venture between two neighborhood garages.

The court concluded the school building fire was not an insurable "occurrence" under the policy because it was not an "accident." Instead, the court found the fire damage resulted from the deliberate acts of the boy. The court reasoned that since there was not an insurable "occurrence," Unigard did not have a duty to defend or indemnify either the boy or his parents.

Error is first assigned to the court's conclusion that the fire damage did not result from an insurable "occurrence." The school district's insurers offer two arguments: (1) the term "accident" within the policy is ambiguous in that it is not clear whether the insured's act or the results of his act must be accidental so as to provide coverage; and (2) since the boy neither expected nor intended the fire damage to the school, the exclusionary clause is inapplicable.

█ The argument that the term "accident" is ambiguous is not well taken. In a long line of cases our courts have said that an accident is never present when a deliberate act

---

[1]The policy provides: "1. 'Insured' means

"a. the Named Insured stated in the Declarations of this endorsement;

"b. if residents of the Named Insured's household, his spouse, the relatives of either, and any other person under the age of twenty-one in the care of any insured; . . ."

is performed unless some additional unexpected, independent and unforeseen happening occurs which produces or brings about the result of injury or death.[2] The means as well as the result must be unforeseen, involuntary, unexpected and unusual.[3] The intentional and deliberate act of William Winkler in starting the fire which caused the school building blaze cannot be said to be involuntary. Therefore, as to William Winkler, the damage to the school was not caused by accidental means nor can it be considered, under the policy definitions, an insurable "occurrence."

Nonetheless, the school district insurers argue that the policy is applicable because in order to exclude the intentional acts of the insured from coverage, the damage must be expected or intended from the standpoint of the insured. There is a definite split of authority as to whether the intentional injury exclusion clause which exempts expected or intended damage requires specific intent on the part of the insured to cause the resultant damage.[4] Here, though, there is substantial evidence from which the court could

---

[2]*Johnson v. Business Men's Assur. Co. of America,* 38 Wn.2d 245, 228 P.2d 760 (1951); *McMahan v. Mutual Benefit Health & Accident Ass'n,* 33 Wn.2d 415, 206 P.2d 292 (1949); *McMahan v. Mutual Benefit Health & Accident Ass'n,* 28 Wn.2d 202, 182 P.2d 4 (1947); *Evans v. Metropolitan Life Ins. Co.,* 26 Wn.2d 594, 174 P.2d 961 (1946); *Hayden v. Insurance Co. of N. America,* 5 Wn. App. 710, 490 P.2d 454 (1971).

[3]*Johnson v. Business Men's Assur. Co. of America,* 38 Wn.2d 245, 228 P.2d 760 (1951); *Pierce v. Pacific Mut. Life Ins. Co.,* 7 Wn.2d 151, 162, 109 P.2d 322 (1941); *Briscoe v. Travelers Indem. Co.,* 18 Wn. App. 662, 666, 571 P.2d 226 (1977).

[4]See cases collected in Annot., *Liability Insurance: Specific Exclusion of Liability for Injury Intentionally Caused by Insured,* 2 A.L.R.3d 1238, 1241 (1965). There the author states:

> The courts have generally held that injury or damage is "caused intentionally" within the meaning of an "intentional injury exclusion clause" if the insured has acted with the specific intent to cause harm to a third party, with the result that the insurer will not be relieved of its obligations under a liability policy containing such an exclusion unless the insured has acted with such specific intent.

have found that the damage to the school building was expected or intended on the part of the boy despite his in-court declarations to the contrary. Thus, as to William Winkler, the fire damage to the building was the expected or intended result of a clearly intentional act. Therefore, Unigard has no duty to defend the youth or indemnify him for any sums he may become legally obligated to pay as a result of the school district action against him.

Error is next assigned to the court's conclusion that since the fire damage was not caused by an "accident" within the terms of the policy, Unigard does not have a duty to defend or indemnify the boy's parents in the action brought against them by the school district. Essentially, the school district's insurers argue that the intentional act of one insured cannot be imputed to other insureds so as to exclude insurance coverage for all; that the liability of the Hensleys, if any, is grounded in their negligent failure to supervise the boy which is not an excluded intentional act. Unigard maintains there was no evidence of negligence on the part of the Hensleys and that the policy of excluding intentional acts from liability insurance coverage would be seriously undermined if coverage was provided to the parents of minors who have committed intentional acts.

We agree with Unigard that public policy prevents an insured from benefitting from his wrongful acts; but here, as in other cases which have considered the question,[5] it is not the intentional act of the parents which has caused the damage. Precedent and the language of the Unigard insurance policy require coverage for Mr. and Mrs. Hensley.

The policy extends defense and indemnification to "the Insured," and it excludes from coverage intentional acts resulting in injury or damage "expected or intended from the standpoint of the insured." The parties concede

---

[5]See, e.g., Armstrong v. Security Ins. Group, 288 So. 2d 134, 136 (Ala. 1973); Walker v. Lumbermens Mut. Cas. Co., 491 S.W.2d 696, 699 (Tex. Civ. App. 1973); Arenson v. National Auto. & Cas. Ins. Co., 45 Cal. 2d 81, 286 P.2d 816, 818 (1955).

the boy and the Hensleys are all "insureds" under the policy. In such instances, where coverage and exclusion is defined in terms of "the insured," the courts have uniformly considered the contract between the insurer and several insureds to be separable, rather than joint, *i.e.,* there are separate contracts with each of the insureds.[6] The result is that an excluded act of one insured does not bar coverage for additional insureds who have not engaged in the excluded conduct.

The judgment of the Superior Court is affirmed insofar as it denies coverage to William Winkler and reversed insofar as it denies coverage to the Hensleys.

MUNSON, C.J., and GREEN, J., concur.

Reconsideration denied June 30, 1978.

---

[6]See, in addition to cases cited in footnote 5, the following: *Pawtucket Mut. Ins. Co. v. Lebrecht,* 190 A.2d 420, 423 (N.H. 1963); *Morgan v. Greater New York Taxpayers Mut. Ins. Ass'n,* 305 N.Y. 243, 112 N.E.2d 273, 275 (1953); *Hoyt v. New Hampshire Fire Ins. Co.,* 29 A.2d 121, 123 (N.H. 1942); *Pratt v. Hanover Fire Ins. Co.,* 146 A. 763, 765 (R.I. 1929).