[No. 22926–5–I.    Division One.    January 29, 1990.]

RICHARD DIANA, *Appellant,* v. WESTERN NATIONAL
ASSURANCE COMPANY, *Respondent.*

*David A. Trieweiler* and *Evans, Craven & Lackie,* for
appellant.

*David M. Schoeggl* and *Lane Powell Moss & Miller*, for respondent.

Winsor, J.—Richard Diana, an insured, appeals from an order granting summary judgment to Western National Assurance Company (Western), an insurer, and dismissing Diana's claim. Diana also appeals the denial of his motion for summary judgment. Western denied coverage to Diana under his homeowner's policy for damages resulting from a contractor's removal of load–bearing walls from Diana's home. We reverse and remand for trial on a factual issue relating to coverage.

Diana purchased an all–risk homeowner's insurance policy from Western. Shortly thereafter, Diana hired a contractor to remodel his house. As a part of the remodeling job, the contractor removed some interior and exterior walls and ceiling supports in an effort to achieve a feeling of spatial openness.

In the process of removing walls, the contractor discovered dry rot and recommended to Diana that he remove more walls than originally contemplated. Diana acquiesced, relying upon the contractor's assurances that the house would remain structurally sound.

Diana and the contractor got into a dispute and the contractor walked off the job. Although the contractor had removed walls and ceiling supports, he had not replaced them with new supports. Diana attempted to hire other carpenters to finish the remodeling, but could not find anyone willing.

Subsequently, on a windy night Diana heard loud creaking and popping noises in the ceiling and roof. He then examined the ceiling and walls and found gaps between them.

Diana called Western to report the damage. Western sent a structural engineer and a contractor to examine the house. Both opined the damage to the house was a result of structural deficiencies caused by the remodel, including both vertical load deficiencies and inadequate lateral bracing. Western's contractor warned that the house was in

imminent danger of collapse should any outside force such as wind or weather hit it. Soon thereafter, Western canceled Diana's policy and ultimately rejected his claim.

Diana brought this declaratory judgment action on the question of coverage and moved for summary judgment. Western made a cross motion for summary judgment. The judge granted judgment to Western, denied Diana's motion for summary judgment, and dismissed Diana's claims in their entirety.

Three issues are presented on appeal: (1) whether the damage to Diana's house was caused by an "accident" within the meaning of the insurance policy; (2) whether the removal of load–bearing walls so materially altered the risk undertaken by Western as to void the homeowner's policy; and (3) whether the trial court erred in denying summary judgment to Diana.

1. *Was the damage to Diana's house caused by an "accident" covered under the terms of the policy?*

 Diana's policy covers all accidents, occurrences and losses unless specifically excluded by the terms of the policy. The term "accident" is not defined within the policy itself, so we turn to decisional law. *Detweiler v. J.C. Penney Cas. Ins. Co.*, 110 Wn.2d 99, 104, 751 P.2d 282 (1988); *Lloyd v. First Farwest Life Ins. Co.*, 54 Wn. App. 299, 302, 773 P.2d 426, *review denied*, 113 Wn.2d 1017 (1989). In Washington, the term "accident" means "an unusual, unexpected, and unforseen happening." *Grange Ins. Co. v. Brosseau*, 113 Wn.2d 91, 95, 776 P.2d 123 (1989) (citing *Tieton v. General Ins. Co. of Am.*, 61 Wn.2d 716, 721–22, 380 P.2d 127 (1963)). In addition, "an accident is never present when a deliberate act is performed unless some additional unexpected, independent and unforeseen happening occurs" that produces the damage. *Detweiler*, 110 Wn.2d at 104 (quoting *Unigard Mut. Ins. Co. v. Spokane Sch. Dist. 81*, 20 Wn. App. 261, 263–64, 579 P.2d 1015 (1978)).

In denying coverage on the basis of "accident" this court has recently explained:

> It is not necessary that the claimant intend or expect the injurious consequences of [his] actions. *All that is required is that the claimant know or should know facts from which a prudent person would conclude that the injurious consequences are reasonably foreseeable.* Otherwise, an insured could shift intentionally inflicted injuries to an insurer in violation of public policy.
>
> Under the common law distinction between accidental results and accidental means, summary judgment is proper when the evidence establishes as a matter of law that the claimant's injury is (1) a "natural consequence" of deliberate conduct, and (2) not the product of an unusual or atypical intervening event.

(Citations omitted. Italics ours.) *Lloyd,* 54 Wn. App. at 302–03.

The parties agree that the contractor's work caused the house to partially collapse, and that Diana performed a deliberate act by hiring the contractor and allowing him to take out walls in his home. The parties also do not dispute that Diana did not know that the walls the contractor took out were load bearing. They strongly disagree, however, over whether or not Diana should have known that the removal of those walls would cause structural damage. The question then becomes whether Diana knew facts that would have caused a prudent person to conclude that the damage incurred was reasonably foreseeable. *See Lloyd,* 54 Wn. App. at 302–03.

An examination of Washington cases that deal with this question reveals a continuum. On one end of the spectrum, courts deny coverage as a matter of law when injuries or damage are intentionally inflicted by the claimant, or are against public policy. *See Grange,* 113 Wn.2d at 99 (intentional shooting of person committed in self-defense by insured not covered by insurance policy as an "accident"); *Lloyd,* 54 Wn. App. at 304 (injuries resulting from intentional ingestion of cocaine held to be the natural consequence of claimant's act, and therefore not an accident for purposes of insurance coverage); *Unigard,* 20 Wn. App. at 263–64 (damage to school resulting from fire set in garbage can by 11–year–old boy not an "accident" despite boy's claim that he neither intended nor expected the fire to

damage the school). On the other end of the spectrum, when the facts clearly show that the insured had no actual or reasonable knowledge of the means or the likely result of the damage, the courts find coverage as a matter of law. *See Federated Am. Ins. Co. v. Strong,* 102 Wn.2d 665, 674, 689 P.2d 68 (1984) (damage resulting from insured's wife's intentional collision with two vehicles held accidental as to insured and covered by policy); *Roller v. Stonewall Ins. Co.,* 55 Wn. App. 758, 763–64, 780 P.2d 278 (1989) (injuries sustained by insured when ex–wife intentionally hit him with car held to be an accident and covered by insurance policy); *Gruol Constr. Co. v. Insurance Co. of N. Am.,* 11 Wn. App. 632, 634–35, 524 P.2d 427 (damage caused by dry rot held not foreseeable and an "accident" for purposes of coverage under insurance policy where insured construction company had no actual or reasonable knowledge of defective backfilling), *review denied,* 84 Wn.2d 1014 (1974).

Other cases, such as this one, fall somewhere in the middle of the continuum. Although policy coverage is normally a question of law, this class of cases must be determined by their particular facts and the closeness of the relationship between the act and the result. One such case is *Detweiler,* 110 Wn.2d at 99. There the claimant and another person, who had been drinking in a tavern, decided to go to the claimant's home. As they left the tavern, the other person jumped into claimant's vehicle and drove off. The claimant managed to jump on the back of the pickup, and was taken on a wild ride through city streets and back roads. At one point, the truck abruptly decelerated, and the claimant was thrown or fell off the back of the truck. When the truck turned around and headed back toward him, the claimant, who was carrying a weapon, fired six shots at point blank range at the left rear wheel and tire of the passing truck. The bullets fragmented when they hit the wheel and frame and ricocheted back at the claimant's face and neck, causing injury. As in this case, the claimant filed a declaratory judgment action on the question of coverage. Both parties moved for summary judgment, and the trial court granted in favor of the claimant. *Detweiler,* 110 Wn.2d at 101–02.

The Supreme Court reversed, finding that the trial court erred in determining the issue as a matter of law and granting the claimant's motion on a factual issue. *Detweiler*, 110 Wn.2d at 108–09. The court noted that while the claimant had intentionally fired the shots, the resulting injury was obviously unintended. The fact that the claimant was familiar with firearms, as well as the truck itself made it at least arguable that he should reasonably have known that he would be injured as a consequence of his actions. Looking at all the "variables inherent in this confused occurrence," whether an "accident" occurred was a factual issue, since reasonable minds could disagree as to whether under the circumstances an additional, unexpected independent and unforeseen happening caused the injury. *Detweiler*, 110 Wn.2d at 107–08.

Similarly, in *McKinnon v. Republic Nat'l Life Ins. Co.*, 25 Wn. App. 854, 610 P.2d 944 (1980), a proficient swimmer died after jumping off the Evergreen Point Floating Bridge. Shortly before he jumped, he was seen darting between cars on the bridge, as if he were being chased by someone. There was no known motive for suicide and the deceased was a characteristically cautious person. From these facts, the court surmised that a jury could conclude that "something occurred which impaired his swimming capacity." *McKinnon*, 25 Wn. App. at 859. Therefore the court could not state as a matter of law that the deceased intended to commit suicide or that some intervening event did not cause his death. The court concluded that whether or not these events occurred and were "'unusual, unexpected, or unforeseen'" were questions of fact for a jury to resolve, not questions of law. *McKinnon*, 25 Wn. App. at 860.

Turning to the facts in this case, we are presented with an unusual and complicated set of facts, as were the courts in *Detweiler* and *McKinnon*. We are not prepared to find that as a matter of law Diana reasonably should have known that the contractor's removal of the walls would cause structural damage, or that the damage was not an unexpected or unforeseen event. Viewing the facts in the

light most favorable to Diana, reasonable minds could disagree about whether Diana should have known that damage would result from the removal of those walls. *See Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). No evidence in the record indicates that Diana had any specialized knowledge of construction practices. In fact, Western's structural engineer testified that Diana "did not have a high degree of sophistication in structural integrity relating to residential renovation." Diana testified that he relied on the contractor's assurances that removal of the walls would not harm the structural integrity of the house. Further, it is unclear from the record exactly which walls were removed. At oral argument, Western conceded that the alterations which caused the damage, from a viewer's perspective, appeared slight. From these facts, a jury could conclude that Diana reasonably did not know that the damage would result from the removal of certain walls from the home.

We hold that the trial court incorrectly granted summary judgment to the insurer. It remains for a trier of fact to decide from all the facts and circumstances whether or not Diana reasonably should have known that removal of the walls would cause the damage to the home.

2. *Did the contractor's removal of load–bearing walls void homeowner's insurance coverage on the basis that a material alteration of the risk had occurred?*

Western argues that by having the remodeling done, Diana materially altered the risk that Western insured, and in so doing, voided the insurance policy. More specifically, Western argues that Diana failed to properly notify it of the renovation that materially altered the risk it undertook, and this failure voided the policy.

■ Western's argument is not well taken. In support of its argument, Western cites 4A J. Appleman, *Insurance* § 2873 (1969). The treatise discusses material alterations of and additions to buildings, and states "if [the remodeling] tended materially to increase the risk, the policy would be

absolutely void, *if the insured failed to give the notice required by the policy.*" (Italics ours.) 4A J. Appleman, *supra* at 561. The terms of this insurance policy, however, contain no requirement that the insured notice the insurer of material alteration. Further, Western has cited no authority in support of its bald assertion of an implied duty of notice on the part of Diana. Therefore, Western's argument that Diana was required to notify Western of the remodeling is without merit.

The lone case cited by Western, *St. Amant v. American Home Assur. Co.,* 158 So. 2d 871 (La. Ct. App. 1963), is also inapposite. In *St. Amant,* an insured moved a partially constructed building and damaged it in the process of the move. Thereafter, the building was totally destroyed in a windstorm. The insured tried to collect for the loss, alleging that it resulted from the storm. The insurer denied coverage, and the insured sued for recovery on the policy. *St. Amant,* 158 So. 2d at 872–74.

The appellate court affirmed the trial court's denial of coverage. The court held that the damage to the structure was clearly caused by the attempt to move it, not by the windstorm. The moving of the building was an uninsured risk, expressly excluded by the policy. As a result, the loss was not covered by the policy. *St. Amant,* 158 So. 2d at 874.

The same is not true in this case. Renovation of a home and removal of walls were not expressly excluded by the policy. Further, the policy itself covers "building materials and supplies located on the insured premises and intended for use in construction on the insured premises." This coverage indicates that the policy contemplated possible remodeling projects. Therefore, *St. Amant* is inapplicable to the case at bar.

As the authorities cited by Western do not support its argument of material alteration of the risk, it was not entitled to summary judgment on that theory.

3. *Did the trial court err in denying appellant's motion for summary judgment?*

■ Diana seeks review on the denial of his motion for summary judgment, alleging the same assignments of error discussed above. Denial of a motion for summary judgment is not ordinarily an appealable order under RAP 2.2(a), and discretionary review of such orders under RAP 2.3 is rarely granted. *Sea-Pac Co. v. United Food & Comm'l Workers Local Union 44*, 103 Wn.2d 800, 801–02, 699 P.2d 217 (1985); *Roth v. Bell*, 24 Wn. App. 92, 104, 600 P.2d 602 (1979). Since issues of fact are still unresolved at this point, discretionary review is not warranted.

We reverse the order granting summary judgment to Western and dismissing Diana's claims and remand to the trial court for further proceedings.

PEKELIS and FORREST, JJ., concur.