[No. 9083-3-III.   Division Three.   April 4, 1989.]

FISCUS MOTOR FREIGHT, INC., *Respondent,* AMERICAN ECONOMY INSURANCE Co., *Appellant,* v. UNIVERSAL SECURITY INSURANCE Co., *Respondent.*

*Norman Nashem* and *Nashem & Wagner,* for appellant.

*Douglas Wilson* and *Wilson & Mikesell,* for respondent Fiscus Motor Freight, Inc.

*Walter Meyer* and *Meyer & Fluegge,* for respondent Universal Security Insurance Co.

THOMPSON, C.J.—In this action for declaratory judgment, American Economy Insurance Company and Universal Security Insurance Company contest their duties related to a personal injury lawsuit against their insured, Fiscus Motor Freight, Inc. American contends its policy does not apply because of the application of its "other insurance" provision. On cross appeal, Universal argues its policy does not apply because the accident did not arise out of the use of an insured vehicle. We decide both issues in favor of American, and remand the case to the superior court.

Robert Wright was a truck driver for Fiscus Motor Freight. On March 29, 1986, he made a fertilizer delivery to a Full Circle, Inc., plant in Eltopia, Washington. A friend, Jesse Andrew Griggs, accompanied Mr. Wright because he wanted to learn to drive a truck.

Outside the Full Circle plant were two adjacent pits; an underground auger was designed to move the fertilizer from the pits to a storage building. The pit closer to the building

(pit 1) was under a railroad spur and was covered with a metal grate. The pit farther from the building (pit 2) was in the center of a driveway.

When Mr. Wright arrived with two belly dump trailers, he positioned his truck so the fertilizer would fall into pit 2. A Full Circle employee turned on the auger, told Mr. Wright it may overheat and stop, and showed him where the switch was located. The Full Circle employees then left to perform other tasks.

As the trailers were being emptied, the auger stopped several times, and Mr. Wright or Mr. Griggs had to throw the circuit breaker switch to start it again. At one point, fertilizer piled up around pit 2, and fertilizer that had been moved by the auger built up inside pit 1. Mr. Wright believed it was necessary to remove the fertilizer from the pits, and moved the truck away from pit 2. He removed the grate from pit 1 and shoveled the fertilizer from both pits, piling it near the edges. He again restarted the auger.

Meanwhile, Mr. Griggs had gone to a nearby store. As he returned with two bottles of pop, he "apparently" slipped and fell into pit 1, severely injuring his leg. At the time, the trailers were parked away from the pits and the dump doors were closed.

Mr. Griggs sued Fiscus, which had insurance policies with both American and Universal. American concedes an endorsement to its comprehensive general liability policy provided coverage in these circumstances. Universal's policy provided basic automobile liability and physical damage protection.

American filed this action for declaratory judgment, and both insurance companies moved for summary judgment. The trial court held both policies provided coverage, and ordered both insurers to defend Fiscus. The court also ordered both companies to indemnify Fiscus on a pro rata basis. American's claim against Universal for attorney fees and expenses of defense has not yet been resolved. This matter is before the Court of Appeals pursuant to RAP 2.2(d).

■■ We first address Universal's cross appeal. It contends its policy's "loading and unloading" clause does not afford coverage in these circumstances. Universal's policy provides:

> The company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of
> bodily injury . . .
> to which this Insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use, including loading and unloading, for the purposes stated as applicable thereto in the declarations, of an owned automobile . . . and the company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury . . .

The policy does not define the phrase "loading and unloading". This issue is resolved by *McDonald Indus., Inc. v. Rollins Leasing Corp.*, 95 Wn.2d 909, 912–15, 631 P.2d 947 (1981), in which the court held:

> In determining the meaning of the "loading and unloading" clause the normal rules of construing insurance policies must be employed. Much depends upon whether there is an ambiguity in the language of the contract. Coverage is considered ambiguous "when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable". *Morgan v. Prudential Ins. Co. of America*, 86 Wn.2d 432, 435, 545 P.2d 1193 (1976) and cases cited therein. If ambiguous it should be interpreted
>> in accordance with the way it would be understood by the ordinary man buying insurance, "even though a different meaning may have been intended by the insurer." It is fundamental that ambiguities in the policy must be construed against the insurer and in favor of the insured. This rule applies with added force in the case of exceptions and limitations to the policy's coverage.
>
> (Citations omitted.) *Witherspoon v. St. Paul Fire & Marine Ins. Co.*, 86 Wn.2d 641, 650, 548 P.2d 302 (1976); *accord, Shotwell v. Transamerica Title Ins. Co.*, 91 Wn.2d 161, 167–68, 588 P.2d 208 (1978), and cases cited therein. . . .

In this case there is an obvious ambiguity regarding the meaning of the clause "arising from the loading and unloading of said vehicle". One cannot determine whether the clause was intended to apply only during the actual process of loading or unloading, whether it was to apply to the result of negligent loading operations that occurred well after accomplishment of the actual loading, or whether it was to apply to any incident in which the load was a causal factor. All interpretations are within the realm of reasonableness.

Furthermore, a reading of standard treatises would have put the drafter of a contract, such as this, on notice that the clause "arising from the loading and unloading" is ambiguous. . . . [T]here is a split of authority as to whether "loading and unloading" extends coverage to include that time when the goods are "at rest" or until there is a "completed operation". . . .

Since the language of the agreement is ambiguous, the court must give effect to the reasonable interpretation most favorable to the insured. *See Witherspoon v. St. Paul Fire & Marine Ins. Co., supra; Shotwell v. Transamerica Title Ins. Co., supra.* This is only logical since it was the insurer who used the ambiguous language. If it was intended that a more expansive exception be imposed, the insurer could have clarified its intent. 43 Am. Jur. 2d *Insurance* § 279 (1969); 1 G. Couch, *Cyclopedia of Insurance Law* § 15:77 (2d ed. 1959); *see also Starr v. Aetna Life Ins. Co.,* 41 Wash. 199, 203–04, 83 P. 113 (1905) quoted in *Riordan v. Commercial Travelers Mut. Ins. Co.,* [11 Wn. App. 707, 711, 525 P.2d 804 (1974)].

*McDonald Indus.* involved an exception clause, which the court interpreted narrowly. Anticipating the distinction between exception and coverage clauses, the court quoted 12 G. Couch, *Insurance* § 45:125 (2d ed. 1974):

It is necessary to bear in mind the distinction in the effect of the loading and unloading clause where it *relates to coverage* and where it is an *exception to coverage.* Where it relates to coverage, the presence of any ambiguity in the phrase requires that it be interpreted as broadly as is reasonably proper in order to provide the greatest coverage possible. Where it appears in the policy as an exception, the existence of

ambiguity requires that it be interpreted as narrowly as possible, for the same purpose of providing the maximum coverage through making the least exception to the coverage of the policy.

*McDonald Indus.,* at 915. The clause here relates to coverage, and thus should be interpreted broadly to provide coverage in these circumstances.

Universal contends, however, that other evidence in the record demonstrates the parties did not intend that the clause would apply here. Parol evidence may be considered to ascertain the intent of the parties to an ambiguous instrument. *Levy v. North Am. Co. for Life & Health Ins.,* 90 Wn.2d 846, 852, 586 P.2d 845 (1978). Universal contends an affidavit of its underwriter "implies that it was not the intent of Universal to provide coverage to this type of incident because the possibility of such an incident would not have been considered in determining the premium on the policy since it did not arise out of the maintenance or use of the automobile". Brief of Cross Appellant, at 10. The underwriter's statement the accident did not "arise out of" a use of the vehicle is nothing more than an opinion on a legal issue to be decided by the court. *See Kelly v. Aetna Cas. & Sur. Co.,* 100 Wn.2d 401, 670 P.2d 267 (1983). Also, Universal has referred to authority that underwriters' intent may be used to interpret insurance provisions. However, in *United Pac. Ins. Co. v. Van's Westlake Union, Inc.,* 34 Wn. App. 708, 713, 664 P.2d 1262, *review denied,* 100 Wn.2d 1018 (1983), the court was interpreting provisions that were "substantially changed in an industry–wide revision of standard general liability insurance provisions . . ." And in *Weber v. Biddle,* 4 Wn. App. 519, 528, 483 P.2d 155 (1971), which was cited in *United Pac. Ins.,* at 713, a standard policy provision similarly was changed by the National Bureau of Casualty Underwriters. Neither case provides authority for consideration of individual rate–setting factors as evidence of intent of coverage provisions.

Evidence of customary usage also may be utilized in explaining contractual provisions. *Point Adams Packing*

*Co. v. Daubenspeck,* 21 Wn. App. 250, 254, 584 P.2d 479 (1978); 2 G. Couch, *Insurance* § 15:60 (2d rev. ed. 1984). Universal refers to excerpts from several depositions purporting to demonstrate that delivery is complete when the fertilizer is dumped into the "input opening for a conveyance system", and that truck drivers were not expected to operate augers. It is unclear how this industry standard for delivery relates to the "loading and unloading" policy clause. Whether "delivery" is complete, as between trucker and receiver, should not determine whether the trucker's insurer covers the acts involved in "unloading". It is similarly unclear how a custom regarding who operates an auger relates to what constitutes unloading of a vehicle. Here, even if a Full Circle employee were operating the auger, the vehicle would have been in the "unloading" process.

■ Despite this extrinsic evidence, the policy language remains ambiguous. Universal next contends there is insufficient connection between the accident and the use of the vehicle. We note first that the policy language requires only that the injury *arise out of* the use of the vehicle. Nevertheless, Washington cases consistently have required an element of causation.

> In order to arise out of the "use" of the vehicle it is not necessary that the use be the proximate cause of the accident. It is only necessary that there be a *causal connection* between the use and the accident. *State Farm Mut. Auto. Ins. Co. v. Centennial Ins. Co.,* 14 Wn. App. 541, 543 P.2d 645 (1975), [*review denied,* 87 Wn.2d 1003 (1976)]; 12 *Cyclopedia of Insurance Law, supra* at § 45:56. However, the fact that a vehicle is the mere "situs" of an accident is not sufficient, standing alone, to bring the occurrence within the coverage of a policy such as this. *Handley v. Oakley,* 10 Wn.2d 396, 116 P.2d 833 (1941); *State Farm Mut. Auto. Ins. Co. v. Centennial Ins. Co., supra.*

*Transamerica Ins. Group v. United Pac. Ins. Co.,* 92 Wn.2d 21, 26, 593 P.2d 156 (1979); *see Detweiler v. J.C. Penney Cas. Ins. Co.,* 110 Wn.2d 99, 109, 751 P.2d 282 (1988); *McDonald Indus.,* at 912; *Richfield Oil Corp. v. Harbor Ins.*

*Co.,* 85 Nev. 185, 452 P.2d 462 (1969). Here, the vehicle was not merely the place where the injury occurred. *See Handley v. Oakley,* 10 Wn.2d 396, 405, 116 P.2d 833 (1941); *Criterion Ins. Co. v. Velthouse,* 751 P.2d 1 (Alaska 1986). The unloading was at least one cause of the accident, and clearly "contributed in some way to produce the injury". *McDonald Indus.,* at 912.

Universal argues, however, that the use of the truck was not the *primary* cause of the accident, citing several decisions from other jurisdictions. *See, e.g., Pecos Vly. Cotton Oil, Inc. v. Fireman's Fund Ins. Co.,* 780 F.2d 892 (10th Cir. 1986) (not "efficient and predominating cause"); *Bituminous Cas. Corp. v. Hartford Accident & Indem. Co.,* 330 F.2d 96 (7th Cir. 1964) (not "efficient and predominating cause"); *Kaufman v. Liberty Mut. Ins. Co.,* 264 F.2d 863 (3d Cir. 1959) (no connection); *General Accident Fire & Life Assur. Corp. v. Liberty Mut. Ins. Co.,* 260 So. 2d 249 (Fla. Dist. Ct. App. 1972) (no direct relationship); *Fertitta v. Palmer,* 252 La. 336, 211 So. 2d 282 (1968) ("common sense" approach); *Fidelity & Cas. Co. v. Allstate Ins. Co.,* 275 Minn. 316, 146 N.W.2d 869 (1966) (no direct relationship); *Presbyterian–University of Pa. Med. Ctr. v. Keystone Ins. Co.,* 251 Pa. Super. 71, 380 A.2d 381 (1977) (no direct connection).

Other cases cited by Universal denied coverage because the facts established negligence by another party, not the insured. *See, e.g., Gilbertson v. State Farm Mut. Auto Ins. Co.,* 845 F.2d 245 (10th Cir. 1988); *Indiana Lumbermens Mut. Ins. Co. v. Statesman Ins. Co.,* 260 Ind. 32, 291 N.E.2d 897 (1973); *Metropolitan Property & Liab. Ins. Co. v. Cote,* 122 N.H. 832, 451 A.2d 388 (1982); *Duroseau v. Hempstead,* 117 A.D.2d 579, 498 N.Y.S.2d 51 (1986); *Cosmopolitan Mut. Ins. Co. v. Baltimore & O. R.R.,* 18 A.D.2d 460, 240 N.Y.S.2d 88 (1963); *Amery Motor Co. v. Corey,* 46 Wis. 2d 291, 174 N.W.2d 540 (1970); *Robinson v. Employers' Liab. Assur. Corp.,* 22 Utah 2d 163, 450 P.2d 91 (1969).

The rationale of these cases is difficult to apply here. Because of the nature of this case, the parties' stipulated

statement of facts carefully avoids reference to any "cause" of the injury. In any case, a determination of the "primary" cause of an injury would not be proper, as this determination relates to the ultimate issue of liability. In Washington, a party may be liable for an injury, even though he is not the "primary" cause of it. RCW 4.22.005. Universal thus is confusing liability with coverage. *See Sears v. Grange Ins. Ass'n,* 111 Wn.2d 636, 639, 762 P.2d 1141 (1988). The trial court properly refrained from making this determination.

The court correctly construed the "loading and unloading" clause against Universal, because the clause is ambiguous, and parol evidence presented by Universal does not resolve this ambiguity. *See Transcontinental Ins. Co. v. Washington Pub. Utils. Dists.' Util. Sys.,* 111 Wn.2d 452, 457–63, 760 P.2d 337 (1988). The facts establish sufficient causal connection to require Universal to provide coverage. The trial court's decision on this issue is affirmed.[1]

The issue on American's appeal is whether the two policies' "other insurance" clauses were properly construed to require American to defend and indemnify on a pro rata basis. American's "other insurance" clause provides:

> If, applicable to the loss, there is any valid and collectible insurance, whether on a primary, excess or contingent basis, available to the Insured (in this or any other carrier), there shall be no Insurance afforded hereunder as respects such loss, except, that if the applicable limit of liability of this policy is in excess of the applicable limit of liability provided by the other insurance, this policy shall afford excess insurance over and above such other insurance in an amount sufficient to afford the insured a combined limit of liability equal to the applicable limit of

---

[1]Universal makes two other arguments that merit little attention. First, it argues the auger constitutes "mobile equipment" under the policy and thus coverage is excepted. Universal presented no such argument before the trial court, and we do not consider it here. RAP 2.5(a). Second, Universal contends policy considerations require interpretation of a "loading and unloading" clause in such a way as to require owners of premises to take steps to rectify unsafe conditions. No such consideration applies to this dispute between insurers of the same defendant.

liability afforded by this policy. Insurance under this policy shall not be construed to be concurrent or contributing with any other insurance which is available to the Insured.

This is an excess coverage clause. *Progressive Cas. Ins. Co. v. Cameron,* 45 Wn. App. 272, 280, 724 P.2d 1096 (1986). Universal's "other insurance" clause provides:

The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(a) Contribution by Equal Shares. If all of such other valid and collectible insurance provides for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

(b) Contribution by Limits. If any of such other insurance does not provide for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

By its own terms, Universal's insurance is primary. The first paragraph of Universal's clause clearly indicates Universal will provide coverage even if, as here, other insurance applies on an excess basis.

However, Universal refers to the second paragraph of its clause, which provides for contribution when two policies apply "on the same basis". It argues that because both the American and Universal policies provide coverage, they apply on the same basis, and subparagraph (b) is effective. This interpretation would render the first paragraph of Universal's "other insurance" clause meaningless. Under Universal's interpretation, in all cases in which more than one policy covers a loss, they would apply on the same basis, and contribution would be required. This result conflicts with the statement in the first paragraph that, when the other insurance is excess, Universal's liability "shall not be reduced by the existence of such other insurance".

Insurance contracts should be interpreted in such a way as to give force and effect to each clause. *Neer v. Fireman's Fund Am. Life Ins. Co.*, 103 Wn.2d 316, 320, 692 P.2d 830 (1985). A court should avoid interpretations that lead to absurd conclusions or render policies nonsensical or ineffective. *Morgan v. Prudential Ins. Co. of Am.*, 86 Wn.2d 432, 434–35, 545 P.2d 1193 (1976). Here, the language of Universal's "other insurance" clause unambiguously provides coverage regardless of the existence of other insurance that applies on an excess basis. Contribution is required only when *both* policies are primary, *both* are excess, or *both* are contingent. This is the only interpretation of the phrase "on the same basis" that gives effect to the complete clause. Here, Universal's policy is primary and American's is excess, and the second paragraph of Universal's clause does not apply.

Universal relies primarily on *Glacier Gen. Assur. Co. v. Continental Cas. Co.*, 605 F. Supp. 126 (D.D.C. 1985). In that case, a podiatrist's negligence continued over a period

of time, during which the two insurers successively provided coverage. The court expressly found the negligence occurred in both policy periods, and held neither policy applied to the indivisible portion of the loss covered by the other policy. *Glacier Gen. Assur. Co.,* 605 F. Supp. at 130. In effect, the court held both policies covered separate acts of their insured, and their "other insurance" clauses were not activated. Here, by contrast, both policies apply to the same acts of their insured, and the "other insurance" clauses are applicable.

Universal also argues that if it is held fully responsible as a primary insurer, American escapes liability altogether, under the terms of its "other insurance" clause, because American's limit of liability ($500,000) is lower than Universal's ($750,000). The Supreme Court has addressed this question:

Rocky Mountain argues that if General is not held to a pro rata share of the loss, General will not have actually accepted any risk for the premiums accepted from Robert Shay. We cannot accept this argument as we have held above, consistent with the majority of other decisions, that the intent of the insurers as stated in the "other insurance" clauses is the determinative factor in these cases. The Sixth Circuit Court of Appeals has succinctly stated this idea in *Citizens Mut. Auto. Ins. Co. v. Liberty Mut. Ins. Co.,* 273 F.2d 189, 194 (6th Cir. 1959) as follows:

"Questions of contribution between coinsurers have caused much trouble to the courts, a large part of which has arisen through efforts to equalize equities outside the contract. This trouble is lessened if the parties are left with their contracts as they themselves have made them." [*Grollimund v. Germania Fire Ins. Co.,* 82 N.J.L. 618, 83 A. 1108, L.R.A. 1915B, 509.]

*General Ins. Co. of Am. v. Rocky Mt. Fire & Cas. Co.,* 70 Wn.2d 384, 387, 423 P.2d 537 (1967); *see Progressive Cas. Ins. Co. v. Cameron, supra* at 281–82.

Finally, Universal contends American's "other insurance" clause is discriminatory under RCW 48.18.480, which prohibits unfair discrimination between insureds under like

circumstances. Universal argues the clause allows an insurer to charge premiums even where no insurance is provided. Assuming, for this purpose, that one insurer may raise the issue against another, there is no discrimination here. Application of American's "other insurance" clause results in precisely the same amount of insurance protection as Fiscus would have if the loss were prorated.

The trial court erred in failing to give effect to American's "other insurance" clause. We therefore reverse those portions of the summary judgment order and the declaratory judgment requiring American to provide coverage. We also remand the case to the Superior Court for entry of declaratory judgment in favor of American, and for other action consistent with this decision.

Affirmed in part, reversed in part, and remanded.

MUNSON and SHIELDS, JJ., concur.

Review denied at 113 Wn.2d 1003 (1989).