[No. 14593-0-III. Division Three. May 14, 1996.]

THERESA R. CULP, *Appellant*, v. ALLSTATE INSURANCE
COMPANY, *Respondent*.

*Thomas M. Roberts* and *Cocco, Roberts & Mahoney*, P.S., for appellant.

*Judith A. Corbin, Brad E. Smith*, and *Huppin Ewing Anderson & Paul*, P.S., for respondent.

THOMPSON, J. — Theresa R. Culp appeals the superior court's summary judgment order, which held Allstate Insurance Company's policy on her parents' vehicle did not cover her injuries from an accidental shooting. We affirm.

On September 25, 1990, Theresa R. Culp was a passenger in a Toyota pickup truck driven by Craig Jurs. Ms. Culp was sitting in the passenger seat; two friends, Charity Sperry and Kraig Brumbaugh, were seated on pillows in the bed of the truck. The four teenagers had just returned to Spokane from the Tri–Cities and were going to Mr. Jurs' parents' home on 18th Street. Ms. Sperry was

seated in the left side of the pickup bed behind the driver; Mr. Brumbaugh was seated on the passenger side.

As the pickup approached the Jurs residence, Mr. Brumbaugh picked up a pillow and threw it out of the truck. He did this to tease Mr. Jurs, because the pillow belonged to Mr. Jurs' mother. Mr. Jurs stopped the pickup in his parents' driveway and told Mr. Brumbaugh to get out of the truck and pick up the pillow. When the truck stopped, Ms. Culp got out and walked to the area of the right rear wheel and stood next to Mr. Brumbaugh.

Mr. Brumbaugh continued to tease Mr. Jurs and refused to pick up the pillow. Mr. Jurs got out of the driver's side, arming himself with a shotgun that he regularly carried behind the driver's seat. He stepped to the passenger side, raised the gun to shoulder level and pointed it at Mr. Brumbaugh in a teasing manner, still demanding that he get out of the truck and pick up the pillow.

Mr. Brumbaugh responded playfully and said something to the effect of "a gun, cool, huh." The gun then discharged. Mr. Brumbaugh was killed, and numerous shotgun pellets struck Ms. Culp's head, face, neck and shoulder.[1]

According to Ms. Sperry, Mr. Jurs was holding the shotgun in a steady position, aimed at Mr. Brumbaugh, when it discharged. There was no reason to believe the gun discharged while being unloaded from the pickup, or that it discharged due to coming in contact with the pickup.

Ms. Culp made a claim for underinsured motorist (UIM) benefits under her parents' policy with Allstate, pursuant to the following coverage provision:

> We will pay damages for bodily injury or property damage which an insured person is legally entitled to recover from the owner or operator of an underinsured motor vehicle. Injury must be caused by accident and arise out of the ownership, maintenance or use of an underinsured motor vehicle.

Allstate denied coverage. Ms. Culp filed this action for

---

[1]Mr. Brumbaugh's death was deemed accidental and no charges were filed.

payment of insurance benefits. The superior court granted Allstate's motion for summary judgment, and Ms. Culp appeals.

■ On review of a summary judgment order, this court engages in the same inquiry as the trial court. *Our Lady of Lourdes Hosp. v. Franklin County*, 120 Wn.2d 439, 451, 842 P.2d 956 (1993). Summary judgment is proper only when the pleadings, affidavits, depositions, and admissions on file, viewed in a light most favorable to the nonmoving party, demonstrate no issue of material fact exists and the moving party is entitled to judgment as a matter of law. CR 56(c); *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). We must resolve all reasonable inferences from the evidence against the moving party; summary judgment will be granted if reasonable people could reach only one conclusion. *Detweiler v. J.C. Penney Casualty Ins. Co.*, 110 Wn.2d 99, 108, 751 P.2d 282 (1988).

■■ Interpretation of insurance contracts is a question of law, which the court reviews de novo. *Public Util. Dist. 1 v. International Ins. Co.*, 124 Wn.2d 789, 797, 881 P.2d 1020 (1994); *Mutual of Enumclaw Ins. Co. v. Jerome*, 122 Wn.2d 157, 160, 856 P.2d 1095 (1993). Insurance policies are "given a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Sears v. Grange Ins. Ass'n*, 111 Wn.2d 636, 638, 762 P.2d 1141 (1988). Ambiguities are resolved in favor of the insured. *Jerome*, 122 Wn.2d at 161.

■ The sole issue in this appeal is whether Allstate is required under its policy to provide UIM coverage for Ms. Culp's injuries. Allstate concedes Ms. Culp is an "insured person" as defined in its policy. The question, then, is whether Ms. Culp's injury "ar[o]se out of the ownership, maintenance or use of an underinsured motor vehicle," as required by Allstate's policy. Washington courts have not found the phrase "arising out of" to be ambiguous:

> In Washington, an accident "arises out of" the use of a vehicle if "the vehicle itself or permanent attachments to the

vehicle causally contributed in some way to produce the injury." *Transamerica Ins. Group v. United Pac. Ins. Co.*, 92 Wn.2d 21, 26, 593 P.2d 156 (1979). *SeeMcDonald Indus., Inc. v. Rollins Leasing Corp.*, 95 Wn.2d 909, 631 P.2d 947 (1981). *See also Fiscus Motor Freight, Inc. v. Universal Sec. Ins. Co.*, 53 Wn. App. 777, 770 P.2d 679, *review denied*, 113 Wn.2d 1003 (1989). *See generally* 7 Am. Jur. 2d *Automobile Insurance* § 194, at 703 (1980 & Supp. 1993).

*Jerome*, 122 Wn.2d at 162. It is not necessary that the use be the proximate cause of the accident, *Transamerica Ins. Group v. United Pac. Ins. Co.*, 92 Wn.2d 21, 26, 593 P.2d 156 (1979), but the fact that the vehicle is the "mere situs" of the accident is not enough to establish the required causal connection. *Jerome*, 122 Wn.2d at 163.[2]

 Several Washington cases have addressed the phrase "arising out of" in the context of firearms accidents. In *State Farm Mut. Auto. Ins. Co. v. Centennial Ins. Co.*, 14 Wn. App. 541, 543 P.2d 645 (1975), *review denied*, 87 Wn.2d 1003 (1976), a gun accidentally discharged as a passenger was attempting to unload it. The Supreme Court later characterized the denial of coverage in *Centennial*:

> There is nothing to show that the movement of the vehicle had any causal connection with the gun's discharge; that the gun touched any part of the vehicle; or that any factor contributed to the discharge other than the passenger's abortive attempt to empty the weapon.

*Transamerica*, 92 Wn.2d at 26-27. In *Transamerica*, by contrast, the trigger of a loaded rifle brushed against the gun rack of the vehicle, discharging the weapon and injuring the driver. The court held the accident arose out of the vehicle's use. *Transamerica*, 92 Wn.2d at 27-28. In *De-*

---

[2]A Division Two panel of this court recently stated the test differently. *Beckman v. Connolly*, 79 Wn. App. 265, 273, 898 P.2d 357 (1995) ("[T]he claimed injury must have originated from, had its origin in, grown out of, or flowed from, the use of the vehicle."). The *Beckman* court curiously distinguished *Jerome* on the basis that *Jerome* was "construing somewhat different policy language." *Beckman*, 79 Wn. App. at 273. In *Jerome*, the policy used the phrase "resulting from," but the court treated that phrase as equivalent to the phrase "arising out of." *Jerome* clearly interpreted the phrase "arising out of," and we treat its holding as binding in this case.

*tweiler*, 110 Wn.2d 99, the claimant fired a pistol at the vehicle; the bullets fragmented when they struck the vehicle, and struck the claimant. The court held the accident arose out of the vehicle's use, because the vehicle "causally contributed to the claimant's injuries when the bullets struck the pickup, . . . then fragmented and injured him." *Detweiler*, 110 Wn.2d at 109.

Ms. Culp argues first that she, Mr. Jurs, and Mr. Brumbaugh were *using* the vehicle at the time of the accident. She urges the court to apply the so-called *Rau* factors, adopted in *Rau v. Liberty Mut. Ins. Co.*, 21 Wn. App. 326, 334, 585 P.2d 157 (1978) and applied in *Roller v. Stonewall Ins. Co.*, 115 Wn.2d 679, 687, 801 P.2d 207 (1990). *See Cherry v. Truck Ins. Exch*, 77 Wn. App. 557, 892 P.2d 768, *review denied*, 127 Wn.2d 1012 (1995). However, the question whether a person is "using" a vehicle is different from the question whether the accident "arose out of" the use. *See Heringlake v. State Farm Fire & Casualty Co.*, 74 Wn. App. 179, 189, 872 P.2d 539, *review denied*, 125 Wn.2d 1003 (1994). Regardless of whose "use" is involved, there must be a causal connection between the use and the injury.

This case is closely analogous to *Centennial*, and is distinguishable from *Transamerica* and *Detweiler*. Unlike the accident in *Transamerica*, there is no evidence the discharge of Mr. Jurs' shotgun was due to contact with any portion of the vehicle or was causally connected to the use of the vehicle. Unlike the injury in *Detweiler*, none of the pellets ricocheted off the vehicle. There is no evidence either Mr. Brumbaugh's presence in the bed of the pickup or Ms. Culp's proximity to the vehicle causally contributed in any way to Mr. Jurs' discharge of the shotgun. Under the circumstances, as in *Centennial*, the vehicle was the mere situs of the accident.

Ms. Culp relies heavily on *Fiscus Motor Freight, Inc. v. Universal Sec. Ins. Co.*, 53 Wn. App. 777, 770 P.2d 679, *review denied*, 113 Wn.2d 1003 (1989). In that case, the policy covered occurrences "arising out of the ownership,

maintenance or use, including loading and unloading." The accident was covered because it occurred during the normal process of unloading a fertilizer truck. The unloading was a cause of the accident and contributed to produce the injury. Thus, the vehicle was not merely the situs of the injury. *Id.* at 783-84. *Fiscus* does not apply here, because Allstate's policy language did not include the phrase "loading and unloading." Moreover, there is no evidence loading or unloading of the vehicle in any way caused the accident.

Finally, Ms. Culp argues her injuries arose out of Mr. Jurs' *ownership* of the vehicle. She reasons Mr. Jurs was asserting his ownership of the truck by demanding that Mr. Brumbaugh get out and pick up the pillow. Even if this manner of "asserting ownership" were within the policy language, there is no factual support in the record for Ms. Culp's argument. The record indicates Mr. Jurs was not asserting his ownership in the pickup, but rather was demanding that Mr. Brumbaugh pick up a pillow. Under these facts, Ms. Culp's injuries did not arise out of Mr. Jurs' ownership of the vehicle, which was the mere situs of the accident.

The superior court correctly dismissed Ms. Culp's claim. The order of dismissal is affirmed.

SWEENEY, C.J., and SCHULTHEIS, J., concur.

Review denied at 130 Wn.2d 1009 (1996).