[No. 48529-6-I.   Division One.   December 24, 2001.]

MICHAEL D. MCCAULEY, ET AL., *Respondents*, v. METROPOLITAN
PROPERTY AND CASUALTY INSURANCE COMPANY, *Appellant*.

630

*Ronald S. Dinning* (of *Merrick, Hofstedt & Lindsey, P.S.*), for appellant.

*Mark W. Davis* (of *Curran Mendoza, P.S.*), for respondents.

Cox, J. — Metropolitan Property and Casualty Insurance Company appeals a summary judgment order declaring that Michael McCauley is entitled to underinsured motorist (UIM) coverage for an injury he sustained in a shooting accident. McCauley was injured when a rifle discharged while its owner was unloading it from an all-terrain vehicle (ATV). At issue is whether this accident "arose out of the use of" the underinsured vehicle. Because the vehicle causally contributed to the injury resulting from the discharge of the firearm, we hold that McCauley is entitled to UIM coverage under Metropolitan's policy. We affirm.

This is the second appeal addressing insurance coverage for McCauley's injuries. In *Country Mutual Insurance Co. v. McCauley*,[1] we affirmed the denial of coverage under the "unloading" exclusion of his hunting partner's homeowner's insurance policy. Here, we address McCauley's UIM coverage in his policy with Metropolitan. As we explained in our prior opinion:

> Dennis Brothers, Mike McCauley, and two of their friends went to Nevada on a hunting trip. Brothers brought along his four-wheel "all terrain vehicle" (ATV). Eventually, the four friends separated into two groups. After a day of hunting, Brothers placed his loaded rifle atop a backpack. He then loaded them both on top of a steel rack attached to the front of the ATV. He secured the rifle and backpack by stretching a bungee cord over both and hooking the cord into one of the bars of the steel rack.

> When Brothers arrived at camp, he began removing the rifle and backpack from the ATV by unhooking the bungee cord. During this process, the gun discharged, and a bullet struck McCauley. He survived, but underwent several surgeries.[2]

Country Mutual brought a declaratory judgment action to determine whether its policy exclusion for "unloading" a recreational vehicle applied. We held that it did.

After our decision in *Country Mutual*, Michael and Deana McCauley sought UIM coverage under their Metropolitan automobile policy. Metropolitan denied coverage.

The McCauleys commenced this declaratory judgment action to establish UIM coverage. Based on stipulated facts, Metropolitan and the McCauleys made cross-motions for summary judgment.

The trial court granted the McCauleys' motion, and denied Metropolitan's. The court also awarded the McCauleys their attorney fees and costs. The parties then entered into a stipulated judgment on damages, in which

---

[1] 95 Wn. App. 306, 974 P.2d 1288, *review denied*, 139 Wn.2d 1004 (1999).

[2] *Country Mut.*, 95 Wn. App at 307.

Metropolitan agreed that it is liable for the policy UIM limit if the summary judgment order is upheld on appeal. This appeal by Metropolitan followed.

## Causation

Metropolitan primarily argues that, because there was no direct physical contact between the rifle and either the ATV or any of its permanent attachments, the vehicle did not causally contribute to the accident. Thus, this insurer maintains that McCauley's injuries did not "ar[i]se out of the use of the" vehicle, and are excluded from UIM coverage. Metropolitan's position is contrary to the law, and we reject it.

When reviewing a summary judgment order, we engage in the same inquiry as the trial court.[3] In doing so, we will consider all facts and reasonable inferences from the facts in the light most favorable to the nonmoving party.[4] We will affirm an order granting summary judgment if there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law.[5]

▆▆▆ The parties submitted an agreed statement of facts to the trial court for purposes of summary judgment. Because no material facts are in dispute, the only issue before us is the proper interpretation of the UIM insuring provisions of the Metropolitan policy. Interpretation of an insurance policy is a question of law that we review de novo.[6] In construing an insurance contract, we will give the policy "a fair, reasonable, and sensible construction consistent with the understanding of an average person purchasing insurance."[7]

The insuring provision at issue states that Metropolitan "will pay bodily injury damages, caused by an accident

---

[3] *Welch v. Southland Corp.*, 134 Wn.2d 629, 632, 952 P.2d 162 (1998).

[4] *Enter. Leasing, Inc. v. City of Tacoma*, 139 Wn.2d 546, 551, 988 P.2d 961 (1999).

[5] CR 56(c); *Kruse v. Hemp*, 121 Wn.2d 715, 722, 853 P.2d 1373 (1993).

[6] *Pub. Util. Dist. No. 1 v. Int'l Ins. Co.*, 124 Wn.2d 789, 797, 881 P.2d 1020 (1994).

[7] *Capelouto v. Valley Forge Ins. Co.*, 98 Wn. App. 7, 13, 990 P.2d 414 (1999). *See also Daley v. Allstate Ins. Co.*, 135 Wn.2d 777, 784, 958 P.2d 990 (1998).

*arising out of the* ownership, maintenance, or *use of* an underinsured highway vehicle."[8] Metropolitan concedes that the ATV qualifies as a "highway vehicle" within the meaning of the policy. It concedes nothing else.

■ At oral argument, Metropolitan appeared to dispute that the unloading of the ATV constituted "use" of the vehicle under the policy. Metropolitan cited no authority for this proposition, and it is contrary to law.[9] We hold that unloading of the ATV here was a "use" within the meaning of the policy.

■ As our Supreme Court recently reaffirmed, an accident " 'arises out of the use' " of a vehicle if " 'the vehicle itself or permanent attachments to the vehicle causally contributed in some way to produce the injury.' "[10] The phrase "arising out of" means "originating from," "having its origin in," "growing out of," or "flowing from."[11] It is not necessary that the use of the vehicle be the proximate cause of the accident.[12] Instead, "[i]t is only necessary that there be a causal connection between the use and the accident."[13] But the fact that the vehicle is the "mere situs" of the accident is not enough to establish the requisite causal connection.[14]

---

[8] (Emphasis added.)

[9] *Transamerica Ins. Group v. United Pac. Ins. Co.*, 92 Wn.2d 21, 26, 593 P.2d 156 (1979) (recognizing that the term "use" includes all proper uses of a vehicle) (citing 7 JOHN ALAN APPELMAN, INSURANCE LAW AND PRACTICE § 4316, at 142 (1966); 12 GEORGE COUCH, CYCLOPEDIA OF INSURANCE LAW § 45:64, at 153 (2d ed. Ronald A. Anderson 1964)), *overruled on other grounds by State v. Olson*, 126 Wn.2d 315, 893 P.2d 629 (1995).

[10] *Mut. of Enumclaw Ins. Co. v. Jerome*, 122 Wn.2d 157, 162, 856 P.2d 1095 (1993) (quoting *Transamerica*, 92 Wn.2d at 26).

[11] *Beckman v. Connolly*, 79 Wn. App. 265, 273, 898 P.2d 357 (1995); *Toll Bridge Auth. v. Aetna Ins. Co.*, 54 Wn. App. 400, 404, 773 P.2d 906 (1989); *Avemco Ins. Co. v. Mock*, 44 Wn. App. 327, 329, 721 P.2d 34 (1986); *Krempl v. Unigard Sec. Ins. Co.*, 69 Wn. App. 703, 707, 850 P.2d 533 (1993).

[12] *Transamerica*, 92 Wn.2d at 26.

[13] *Transamerica*, 92 Wn.2d at 26 (emphasis omitted); *Detweiler v. J.C. Penney Cas. Ins. Co.*, 110 Wn.2d 99, 109, 751 P.2d 282 (1988).

[14] *Jerome*, 122 Wn.2d at 163; *State Farm Mut. Auto Ins. Co. v. Centennial Ins. Co.*, 14 Wn. App. 541, 543, 543 P.2d 645 (1975) (" . . . the vehicle must be more than

As stated by our Supreme Court in the seminal case of *Transamerica Insurance Group v. United Pacific Insurance Co.*, the critical inquiry is "whether the vehicle itself or permanent attachments to the vehicle causally contributed in some way to produce the injury."[15] In that case, a passenger was removing his rifle from a gun rack mounted inside a stationary vehicle when the trigger brushed against the rear bracket of the gun rack.[16] The rifle discharged and injured the driver.[17] In determining whether the accident arose out of the vehicle's use, the Court explained that:

> The cases concerning gunshot wounds received in and around automobiles place particular importance on some *physical involvement of the vehicle itself or some permanently attached part thereof*. Where such physical involvement was absent, the vehicle has been deemed the mere situs of the accident and thus the accident has been construed to fall outside the coverage of the policy.[18]

But the Court recognized that coverage may exist:

> where, as here, the factual pattern of the accident involved some causal relationship between a condition of the vehicle, a permanent attachment thereto, or some aspect of its operation. In such event the vehicle has been considered more than the mere situs of the occurrence and liability has attached under an insurance contract providing for coverage of an accident arising out of use of the automobile.[19]

---

the coincidental place in which the injury occurred."), *review denied*, 87 Wn. 2d 1003 (1976).

[15] *Transamerica Ins. Group v. United Pac. Ins. Co.*, 92 Wn.2d 21, 26, 593 P.2d 156 (1979), *overruled on other grounds by State v. Olson*, 126 Wn.2d 315, 893 P.2d 629 (1995).

[16] *Transamerica*, 92 Wn.2d at 23.

[17] *Transamerica*, 92 Wn.2d at 23.

[18] *Transamerica*, 92 Wn.2d at 26 (emphasis added) (citing *Handley v. Oakley*, 10 Wn.2d 396, 116 P.2d 833 (1941) (ice cream truck was mere situs of accident that occurred when boy was struck by a baseball while purchasing ice cream); *Centennial*, 14 Wn. App. at 543 (moving vehicle mere situs of accident where passenger was attempting to unload bullets from his weapon when it discharged and there was nothing to show that the movement of the vehicle caused the gun to discharge)).

[19] *Transamerica*, 92 Wn.2d at 27.

Significantly, the Court cited representative cases from other jurisdictions supporting its view that the policy language at issue could support coverage.[20] Those cases demonstrate that our Supreme Court did not intend to restrict causal connection in shooting accidents to situations where a weapon actually touches a covered vehicle. That view of *Transamerica* is not inconsistent with that Court concluding on the basis of the facts before it in that case that there was "some causal relationship between a condition of the vehicle, a permanent attachment thereto, or some aspect of its operation." Thus, the vehicle was more than the mere situs of the occurrence. Accordingly, liability attached under the insurance contract, which provided for coverage of an accident arising out of the use of the automobile.[21]

In an attempt to distinguish *Transamerica*, Metropolitan argues that the bungee cord, rather than either the ATV or any permanent attachment to it, actually touched and discharged Brothers' rifle. This is a distinction without a difference. *Transamerica* does not require that there be direct physical contact between the vehicle and the weapon. Rather, it requires only that the vehicle or one of its permanent attachments be somehow physically involved with causing the accident.

Here, the ATV causally contributed to produce McCauley's injuries, and was more than the mere situs of the accident. As we explained in a prior portion of this

---

[20] *Transamerica*, 92 Wn.2d at 27-28 (citing, for example, *Laviana v. Shelby Mut. Ins. Co.*, 224 F. Supp. 563 (D. Vt. 1963) (causal connection existed, and incident arose out of use of vehicle, where there was no contact between gun and car, only between the hunter and car); *Travelers Ins. Co. v. Aetna Cas. & Sur. Co.*, 491 S.W.2d 363 (Tenn. 1973) (although cause of discharge of loaded shotgun in vehicle not clear, the court held it to have arisen out of vehicle's use); *Allstate Ins. Co. v. Truck Ins. Exch.*, 63 Wis. 2d 148, 216 N.W.2d 205 (1974) (where loaded rifle discharged in car, the court held that the accident arose out of the vehicle's use although cause of discharge not clear)).

[21] *Transamerica*, 92 Wn.2d at 27-28.

opinion, the vehicle was in use at the time of the accident. It is clear that the rifle and the backpack on which it rested were both secured to the ATV by bungee cords. One end of a bungee cord apparently remained hooked to the ATV during unloading. Brothers stated in his declaration that, as he began unstrapping the bungee cords to remove his rifle from the steel rack of the ATV, "one of the bungee cords . . . snapped back from its tension, hooked the trigger and discharged the rifle." He further stated that he believed that "the metal hook attached to the end of [his] rubber bungee cord" pulled the trigger. This is sufficient to establish a causal connection between use of the vehicle and the resulting injury. That the rifle was resting on top of a backpack, and did not come into direct physical contact with the ATV, does not bar coverage. There is coverage under the insuring provision of the policy.

As decisions after *Transamerica* make clear, the determinative factor is not whether the weapon discharged due to direct physical contact with the vehicle, but whether the vehicle causally contributed to the injury.[22] For example, in *Detweiler*, the insured fired his pistol at a thief who was driving off in the insured's truck. The bullets fragmented when they hit the truck, and struck the insured.[23] Applying the *Transamerica* test, our Supreme Court determined that the vehicle had "causally contributed" to the insured's injuries. The Court accordingly held that the insured's injuries arose out of the vehicle's use despite the absence of any physical contact between the pistol and the truck.[24]

Our courts have consistently recognized that direct physical contact with the vehicle is not the determinative

---

[22] *See, e.g., Detweiler*, 110 Wn.2d at 109; *Fiscus Motor Freight, Inc. v. Universal Sec. Ins. Co.*, 53 Wn. App. 777, 778-79, 770 P.2d 679, *review denied*, 113 Wn.2d 1003 (1989).

[23] *Detweiler v. J.C. Penney Cas. Ins. Co.*, 110 Wn.2d 99, 101, 751 P.2d 282 (1988).

[24] *Detweiler*, 110 Wn.2d at 109. *See also Fiscus*, 53 Wn. App. at 784 (applying *Transamerica* and concluding that the claimant's injuries "arose from" the unloading of the vehicle despite the lack of physical contact between the truck and the claimant because the unloading clearly "contributed in some way to produce the injury").

factor in evaluating whether an accident arises from vehicle use.[25] Of overriding importance is the presence of some sort of causal connection between a condition of the vehicle, a permanent attachment to it, or some aspect of the operation of the vehicle and the accident.[26]

In support of its argument that the ATV was the mere situs of the accident, Metropolitan relies primarily on *Centennial* and *Culp v. Allstate Insurance Co.*[27] In each of those cases, this court determined that the firearms accident at issue did not "arise out of the use of" a vehicle because the vehicles there did not physically contribute towards producing the injury. But those cases are distinguishable.

In *Centennial*, a passenger in a moving vehicle was attempting to unload his rifle when one of the shells misfired and hit the driver.[28] This court determined that the driver's injury did not "arise from the use of" the vehicle because unloading a weapon in a moving vehicle was not "a natural and reasonable incident or consequence of the use of the vehicle on a hunting trip."[29] This court accordingly determined that the vehicle was merely the coincidental place in which the injury occurred. In discussing *Centennial*, our Supreme Court has since explained that there was nothing there

---

[25] *Heringlake v. State Farm Fire & Cas. Co.*, 74 Wn. App. 179, 872 P.2d 539, *review denied*, 125 Wn.2d 1003 (1994); *Krempl*, 69 Wn. App. at 704 (where claimant was injured by splashing gasoline when insured threw burning gas tank to the ground, injury arose out of the use of the vehicle despite the fact that the gas tank was not in direct contact with the vehicle at the moment of injury); *Beckman*, 79 Wn. App. at 273-74 (vehicle "causally contributed in some fashion toward producing the injury" because gas fumes that exploded were confined within the cab of the truck).

[26] *Transamerica*, 92 Wn.2d at 27. *See also Heringlake*, 74 Wn. App. at 191-92 (child's dog bite injuries did not arise out of the use of the truck in which the dog was leashed because "nothing about the truck or any permanent attachment causally contributed to [the dog] biting" the child).

[27] *State Farm Mut. Auto Ins. Co. v. Centennial Ins. Co.*, 14 Wn. App. 541, 543 P.2d 645 (1975); *Culp v. Allstate Ins. Co.*, 81 Wn. App. 664, 915 P.2d 1166, *review denied*, 130 Wn.2d 1009 (1996).

[28] *Centennial*, 14 Wn. App. at 542.

[29] *Centennial*, 14 Wn. App. at 544.

to show that the movement of the vehicle had any causal connection with the gun's discharge; that the gun touched any part of the vehicle; or that any factor contributed to the discharge other than the passenger's abortive attempt to empty the weapon. Thus, quite properly, the vehicle was deemed no more than the [mere] situs of the accident.[30]

Similarly, in *Culp*, the driver accidentally discharged a shotgun after getting out of the vehicle, injuring a passenger who had also exited the vehicle.[31] This court noted that *"[t]here was no reason to believe the gun discharged while being unloaded from the pickup*, or that it discharged due to coming in contact with the pickup."[32] With no causal connection between the vehicle and gun's discharge, this court determined that "the vehicle was the mere situs of the accident."

Here, unlike *Centennial* and *Culp*, the ATV was more than the mere situs of the accident. Brothers' use of the ATV causally contributed to McCauley's injuries. Brothers was attempting to unhook one end of a bungee cord from the ATV when it snagged the trigger, discharging the rifle that caused the injury. The vehicle, and Brothers' use of it, causally contributed to the accident.

### Reasonable Expectation of Coverage

■ Again relying on *Centennial*, Metropolitan also argues that the discharge of Brothers' rifle under these circumstances was not a "motoring risk" that the parties would reasonably have expected to fall within the coverage of the auto policy. We disagree.

In denying coverage, the *Centennial* court determined that attempting to eject shells from a weapon while riding in a moving vehicle "is not normally anticipated," and that the parties to the insurance contract had not intended to cover the risk that flowed from that act. Regardless of the

---

[30] *Transamerica*, 92 Wn.2d at 26-27.

[31] *Culp*, 81 Wn. App. at 666.

[32] *Culp*, 81 Wn. App. at 666 (emphasis added).

validity of that comment in that case, it has no application here.

Here, the ATV was equipped for off-road use with a permanent rack attached to it for transporting supplies and equipment. Regardless of the wisdom of transporting a loaded rifle in this manner, the act of removing a rifle from the ATV's rack was "a natural and reasonable incident or consequence of the use of the vehicle on a hunting trip."[33] We reject the notion that this risk was outside the reasonable expectations of the parties to the policy.

Because of our disposition of the coverage question, we need not determine whether Brothers' statement that "the bumpy ride back to camp" may have caused the rifle's safety to switch to the off position is sufficient to defeat summary judgment. Here, movement of the vehicle is irrelevant to the question of coverage.

## Attorney Fees and Costs

The McCauleys request attorney fees and costs on appeal under RAP 18.1. An insured that successfully litigates an insurance coverage issue is entitled to recover attorney fees and costs from its insurer.[34] The McCauleys are entitled to fees under *Olympic Steamship*,[35] subject to their compliance with RAP 18.1. That case also serves as the basis to deny Metropolitan's request that we set aside the judgment for fees below.

We affirm the summary judgment order.

AGID, C.J., and GROSSE, J., concur.

---

[33] *Centennial*, 14 Wn. App. at 544.

[34] *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 52, 811 P.2d 673 (1991).

[35] *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991).