[No. 49029-0-I.   Division One.   September 30, 2002.]

CHERYL P. GREENE, ET AL., *Appellants*, v. RALPH ALEXANDER YOUNG, ET AL., *Defendants*, ALLSTATE INSURANCE COMPANY, *Respondent.*

748

*Kari I. Lester* (of *Ben F. Barcus & Associates, P.L.L.C.*), for appellants.

*Marilee C. Erickson* (of *Reed McClure*) and *Thomas L. Schwanz* (of *Snook Schwanz*), for respondent.

BAKER, J. — Mitchell Greene suffers from posttraumatic stress disorder (PTSD) which was triggered by his observations upon arriving at the aftermath of a violent carjacking incident involving his wife and young child. His insurance carrier denied his claim for uninsured motorist coverage. In this declaratory judgment action, the trial court ruled in favor of the insurer on grounds that Mitchell did not suffer

a bodily injury and his claim did not arise from the use of a motor vehicle. We reverse and remand for further proceedings.

## I

When Cheryl Greene picked up her child, Saul, at childcare one evening, she was accosted by a stranger who pushed her into her car, told her he was carrying a gun, and threatened that if she did not move over and give him the keys he would use the gun. He then drove to a cash machine while pawing and threatening Cheryl, who was pregnant with her second child.

The robber forced Cheryl to obtain cash from the ATM (automated teller machine), then used it to buy drugs. He then drove to a soccer field, telling Cheryl she would have to smoke drugs with him. When Cheryl saw her opportunity as they passed a police car, she opened the door and with her child in her arms fell to the ground screaming for help. The kidnapper sped off and ran over both her legs, severely fracturing her ankles. The perpetrator was apprehended two blocks away.

Mitchell Greene arrived at the scene a short time thereafter. He observed that there were fire trucks, ambulances, and police cars at the scene. He witnessed his wife lying on a stretcher with both of her legs in splints, and exhibiting extreme emotional distress. His son was screaming uncontrollably.

The vehicle involved in the incident was owned by the Greenes and insured by Allstate Insurance Company. The policy included uninsured motorist (UIM) coverage with a per person limit of $100,000 and occurrence limits of $300,000.

The Greenes sued the perpetrator, who defaulted. The Greenes filed a motion for entry of judgment and Allstate was notified. Allstate was allowed to intervene.

During the course of the damage hearing, the Greenes presented the testimony of Dr. Charles Schwarzbeck III who testified as to the nature and extent of the injuries

suffered by Cheryl, Saul, and Mitchell. With regard to Mitchell, Schwarzbeck testified that he was unable to regulate himself and that he frequently moved from a drowsy, awake state to a hyperalert, hypervigilant, highly anxious state. Schwarzbeck diagnosed Mitchell with PTSD, triggered when Mitchell arrived at the scene, and testified that Mitchell suffered from physical manifestations of the PTSD such as feeling tense, sweating profusely, crying, headaches, nausea, and inability to sleep.

Judgment was entered in the total amount of $925,337.01 for Cheryl, $415,520.63 for Saul, and $182,715.00 for Mitchell. The award for Mitchell included loss of consortium. Allstate tendered the policy limits to both Cheryl and Saul, but contested its liability to pay Mitchell's claim. Allstate moved for declaratory relief on whether Mitchell's claims for damages meet the requirements for UIM coverage.

The trial court granted summary judgment for Allstate, finding Mitchell's claims for damages were not covered because he did not suffer "bodily injury." The court also found Mitchell's claims were not covered because they did not arise from the "use" of an uninsured motor vehicle. The court also ruled that Mitchell's loss of consortium claim was derivative of Cheryl's claim, and thus could not be included in Mitchell's UIM claim. The Greenes appeal.

## II

█ Allstate argues that Mitchell did not suffer a "bodily injury" because his injury is purely emotional and he did not actually witness the incident. We disagree. PTSD accompanied by physical manifestations falls within the definition of "bodily injury"[1] in this context, and "a family member may recover for emotional distress caused by observing an injured relative at the scene of an accident

---

[1] *Lien Trinh v. Allstate Ins. Co.*, 109 Wn. App. 927, 936, 37 P.3d 1259 (2002).

after its occurrence and before there is substantial change in the relative's condition or location."[2]

In *Lien Trinh v. Allstate Insurance Co.*, 109 Wn. App. 927, 37 P.3d 1259 (2002), we held that PTSD accompanied by physical manifestations falls within the definition of "bodily injury" in the context of a UIM claim. In that case, Trinh was driving on Interstate 5 when she got a flat tire.[3] Her friend arrived and began changing the tire when a drunk driver struck and killed him.[4] Although Trinh was not hit by the car, she suffered from PTSD with physical manifestations similar to those experienced by Mitchell.[5] Allstate denied coverage for Trinh's PTSD damages under an identical UIM provision of the policy:

> We will pay damages for bodily injury or property damage which an insured person is legally entitled to recover from the owner or operator of an underinsured motor vehicle. Injury must be caused by accident and arise out of the ownership, maintenance or use of an underinsured motor vehicle. Bodily injury means bodily injury, sickness, disease or death.

*Trinh*, 109 Wn. App. at 930.

Trinh sued Allstate, seeking a declaration that she was entitled to benefits for damages related to her PTSD under the UIM provision of her policy. The trial court granted summary judgment for Allstate. In reversing, we concluded that the term "bodily injury" under the UIM policy includes emotional injuries that are accompanied by physical manifestations.[6]

Allstate counters that because Mitchell did not witness the accident as Trinh did, he did not suffer "bodily injury." Allstate is mistaken. Our holding in *Trinh* did not turn on whether the accident was witnessed, but instead focused on

---

[2] *Hegel v. McMahon*, 136 Wn.2d 122, 132, 960 P.2d 424 (1998).

[3] *Trinh*, 109 Wn. App. at 928.

[4] *Trinh*, 109 Wn. App. at 929.

[5] *Trinh*, 109 Wn. App. at 929.

[6] *Trinh*, 109 Wn. App. at 931.

whether emotional distress coupled with physical manifestations constituted "bodily injury."[7] It is the seminal case of *Hegel v. McMahon* that clearly answers the question of whether one seeking damages for emotional distress need witness the accident:

> A bright-line rule that limits recovery for emotional distress to those who witnessed the accident is attractive in its simplicity. However, it draws an arbitrary line that serves to exclude plaintiffs without meaningful distinction. The emotional trauma caused by seeing a loved one injured at an accident scene stems not merely from witnessing the transition from health to injury, but also from witnessing the aftermath of an accident in all its alarming detail.[8]

The court concluded that "a family member may recover for emotional distress caused by observing an injured relative at the scene of an accident after its occurrence and before there is substantial change in the relative's condition or location."[9]

Here, Mitchell came upon the scene shortly after the incident concluded. He observed his injured wife at the scene, hysterically crying while being carried on a stretcher. He observed his son in a stranger's arms, also crying and screaming uncontrollably. The location had not changed and there was little change in the condition of his wife and child. His claim is cognizable under *Trinh*.

■■■ We next consider whether the use of the vehicle triggered Mitchell's "bodily injury." Interpretation of an insurance contract is a question of law.[10] Courts interpret insurance contracts as an average insurance purchaser

---

[7] *Trinh* does state that Trinh actually witnessed the accident. *Trinh*, 109 Wn. App. at 935. But it was mentioned merely to distinguish *Dahlke v. State Farm Mutual Automobile Insurance Co.*, 451 N.W.2d 813 (Iowa 1990), a loss of consortium case in which the complainant had no direct exposure to the accident scene or its aftermath. *Trinh*, 109 Wn. App. at 934.

[8] *Hegel v. McMahon*, 136 Wn.2d 122, 130, 960 P.2d 424 (1998).

[9] *Hegel*, 136 Wn.2d at 132.

[10] *Queen City Farms, Inc. v. Cent. Nat'l Ins. Co.*, 126 Wn.2d 50, 65, 882 P.2d 703, 891 P.2d 718 (1994).

would understand them and give undefined terms in these contracts their " 'plain, ordinary, and popular' " meaning.[11] If a policy provision is ambiguous, the interpretation most favorable to the insured applies.[12] "An ambiguity exists only 'if the language on its face is fairly susceptible to two different but reasonable interpretations.' "[13]

■ ■ The policy states that in order for Mitchell to qualify for coverage, his injury must "arise out of the ownership, maintenance or use" of the underinsured vehicle. As stated by the Washington Supreme Court in *Transamerica Insurance Group v. United Pacific Insurance Co.*,[14] the critical inquiry is "whether the vehicle itself or permanent attachments to the vehicle causally contributed in some way to produce the injury."[15] The vehicle need not be the proximate cause of the accident, but there must be a causal connection between the use and the accident.[16] If the vehicle is the "mere situs" of the accident, a causal connection is not established.[17]

In *McCauley v. Metropolitan Property & Casualty Insurance Co.*,[18] McCauley was injured when a rifle discharged while another party was unloading it from a nonmoving all-terrain vehicle.[19] The vehicle never came into contact with McCauley. The bungee cord used to strap the weapon to the vehicle apparently caused the weapon to discharge.[20]

---

[11] *Kish v. Ins. Co. of N. Am.*, 125 Wn.2d 164, 170, 883 P.2d 308 (1994) (quoting *Boeing Co. v. Aetna Cas. & Sur. Co.*, 113 Wn.2d 869, 877, 784 P.2d 507 (1990)).

[12] *Kish*, 125 Wn.2d at 170.

[13] *Kish*, 125 Wn.2d at 171 (quoting *Wash. Pub. Util. Dists.' Utils. Sys. v. Pub. Util. Dist. No. 1 of Clallam County*, 112 Wn.2d 1, 11, 771 P.2d 701 (1989)).

[14] 92 Wn.2d 21, 593 P.2d 156 (1979).

[15] *Transamerica*, 92 Wn.2d 21 at 26; *Mut. of Enumclaw Ins. Co. v. Jerome*, 122 Wn.2d 157, 162, 856 P.2d 1095 (1993).

[16] *Transamerica*, 92 Wn.2d at 26.

[17] *Mut. of Enumclaw*, 122 Wn.2d at 163.

[18] 109 Wn. App. 628, 36 P.3d 1110 (2001).

[19] *McCauley*, 109 Wn. App. at 631.

[20] *McCauley*, 109 Wn. App. at 631.

The vehicle was uninsured because the policy exclusion for "unloading" a recreational vehicle applied. We held that the vehicle causally contributed to the injury resulting from the discharge of the firearm when it was being unloaded from the vehicle, and thus McCauley was entitled to UIM coverage.[21] We pointed out that "our Supreme Court did not intend to restrict causal connection in shooting accidents to situations where a weapon actually touches a covered vehicle."[22]

Cheryl's legs were run over by the uninsured vehicle. Dr. Schwarzbeck testified that, on a more probable than not basis, the incident and Mitchell's reaction to the scene upon arrival caused his PTSD with physical manifestations. Reading *Hegel* and *McCauley* together, we see no reason to restrict causal connection to accident situations where the vehicle actually touches the victim. Accordingly, the vehicle here causally contributed to produce Mitchell's injuries.

■■ We next address issues relating to damages. Allstate correctly points out that Mitchell's loss of consortium claim is derivative of Cheryl's claim, and is therefore extinguished by the payment to Cheryl.[23] Yet the court included the consortium loss as part of the award to Mitchell, with no segregation of the damage elements. Allstate is also correct that UIM coverage would not include PTSD attributable to the carjacking conduct preceding the scene observed by Mitchell when he arrived. Whether Mitchell's PTSD constitutes an indivisible injury is unclear, because there was no cross-examination of Mitchell's medical expert at the damage hearing, and no evidence presented on that issue. We conclude that all damage issues must be resolved on remand.

■■ Mitchell next argues that he is entitled to attorney fees. An award of attorney fees is "required in any legal action where the insurer compels the insured to

[21] *McCauley*, 109 Wn. App. at 630.

[22] *McCauley*, 109 Wn. App. at 635.

[23] *Grange Ins. Ass'n v. Morgavi*, 51 Wn. App. 375, 376, 753 P.2d 999 (1988).

assume the burden of legal action, to obtain the full benefit of his insurance contract."[24] Fees under *Olympic Steamship Co. v. Centennial Insurance Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991), are appropriate where the insurer forces the insured to litigate questions of coverage, but not where the controversy is merely over the amount of, or denial of, a claim.[25] Coverage questions generally concern who is insured, the type of risk insured against, or whether the insurance contract exists.[26] Because Mitchell was forced to litigate questions of coverage when Allstate denied him all benefits under the policy, attorney fees are warranted.

Mitchell also argues that he is entitled to prejudgment interest. A party is entitled to prejudgment interest on liquidated claims.[27] A claim is liquidated if it can be computed with exactness.[28] Mitchell's claim cannot be determined on the record before us, and he is therefore not entitled to prejudgment interest.

We remand for further proceedings consistent with this opinion.

BECKER, C.J., and KENNEDY, J., concur.

---

[24] *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 53, 811 P.2d 673 (1991).

[25] *Dayton v. Farmers Ins. Group*, 124 Wn.2d 277, 280-81, 876 P.2d 896 (1994).

[26] *Kroeger v. First Nat'l Ins. Co.*, 80 Wn. App. 207, 210, 908 P.2d 371 (1995).

[27] *Smith v. Olympic Bank*, 103 Wn.2d 418, 425, 693 P.2d 92 (1985).

[28] *Hansen v. Rothaus*, 107 Wn.2d 468, 472, 730 P.2d 662 (1986).